UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00073-GNS-HBB

GARY SHANNON ROBERTSON                                                      PLAINTIFF

v.

DEPUTY KENNY PERKINS et al.                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 33). The motion is ripe for adjudication.[1] For the reasons below, the motion is **GRANTED**.

**I.      BACKGROUND**

On the morning of May 8, 2020, Plaintiff Gary Shannon Robertson ("Robertson") was walking along the intersection of US HWY 127 and KY HWY 76 in Russell County, Kentucky. (Defs.' Mem. Supp. Mot. Summ. J. 2, DN 33-1 [hereinafter Defs.' Mem.]). Defendant Deputy Kenny Perkins ("Perkins") responded to an assistance call regarding Robertson. (Defs.' Mem. 5). Perkins witnessed Robertson "kicking his feet and swinging his arms at passing motorist" while he was in the middle of Highway 127. (Defs.' Mem. 5). Perkins got out of his vehicle and commanded Robertson to exit the roadway and come towards him, but Robertson did not respond to the instructions. (Defs.' Mem. 5). In his incident report, Perkins stated that "it was apparent that [Robertson] was manifestly under the influence of intoxicants." (Defs.' Mem. 5). Perkins requested Robertson to walk toward his cruiser a second time; however, Robertson did not comply and "was staggering and cussing in a loud voice." (Defs.' Mem. 5). Perkins announced that

---

[1] The time for filing a response has passed, and Plaintiff failed to respond.

Robertson was under arrest, to which Robertson responded that he was not going. (Defs.' Mem. 5). Perkins then deployed his service taser but described the striking as having no effect on Robertson. Robertson then started to "run[] into the south bound lane of 127." (Defs.' Mem. 5).

Deputy Perkins returned to his vehicle and followed Robertson on the road. Later, Perkins exited his vehicle and tried again to instruct Robertson to get in his vehicle, but Robertson refused and continued walking where, at one point, he "walked back onto the roadway [where] motorists [were] traveling." (Defs.' Mem. 5). Deputy Ginn arrived at the scene, where he observed Perkins "giving verbal commands '[t]o get down on the ground.' [Robertson] continued walking aggressively towards Deputy Perkins . . . ." (Defs.' Mem. 6).

Perkins deployed his taser for the second time, again noting that the deployment had no effect on Robertson. (Defs.' Mem. 5). A physical altercation ensued between the two officers and Robertson, and all three fell to the pavement. (Defs.' Mem. 6). Robertson resisted the officers while they attempted to place him in handcuffs. (Defs.' Mem. 6). After handcuffing him, the officers noticed Robertson had a laceration on his head, and Perkins radioed for EMS. (Defs.' Mem. 5). Robertson was transported to the ER for treatment for his head wound and was later transported to the Russell County Jail. (Defs.' Mem. 6).

Robertson's recollection of the incident is vague. At his deposition, Robertson recalled that as he was walking down Highway 127, he "heard somebody holler for" him and told him to get into a truck. (Robertson Dep. 31:1-4, Mar. 11, 2022, DN 33-6). Robertson further stated that an officer tased him when he was across the street, but he "got up, screamed, took off walking," laid down on the ground, and then the officer "beat on [him] while [he] was laying on the ground." (Robertson Dep. 31:4-9). The next thing he remembered was being in the hospital. (Robertson Dep. 31:10-11).

Robertson had not been prescribed any medications at the time of the incident. (Defs.' Mem. 27). He testified he could not recall using drugs on the day of the arrest but stated he used methamphetamine a week or so before the incident. (Robertson Dep. 38:19-25). Robertson tested positive for marijuana and amphetamines and told EMS personnel that he took a drug called "True Love," though later he claimed he had never heard of it before. (Robertson Dep. 38:6-8; Robertson Hospital R. 3, DN 33-7; Robertson Dep. 39:4-13). During his deposition, Robertson testified that he was not intoxicated at the time of the incident, but that he could not think of anyone who could confirm his sobriety. (Robertson Dep. 40:5-15).

Robertson filed this action against Perkins and Sheriff Polston ("Polston") in their official and individual capacities. (Compl. ¶¶ 8-9, DN 1). Robertson asserted federal claim pursuant to 42 U.S.C. § 1983 for: (i) excessive force, and illegal search and seizure in violation of the Fourth Amendment; (ii) cruel and unusual punishment in violation of the Eighth Amendment; and (iii) *Monell* liability. In addition, Robertson asserted state law claims for assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress. (Compl. ¶¶ 18-57).

## II.  JURISDICTION

The Court has jurisdiction on Plaintiff's Fourth Amendment and 42 U.S.C. § 1983 claims. *See* 28 U.S.C. §§ 1331, 1332(a). The Court may exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367. Venue is proper in the Western District of Kentucky as the events occurred in Russell County, Kentucky. *See* 28 U.S.C. § 1391(b).

## III.  DISCUSSION

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

"[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). By failing to file a response to the motion, the non-moving party waives the right to "controvert the facts asserted in the summary judgment motion," and the court "should accept as true all material facts asserted and properly supported in the summary judgment motion." *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

### A. Section 1983 Claims

#### 1. *Individual Capacity*

To succeed on a claim against a defendant in their individual capacity under Section 1983, the plaintiff must show "that the official, acting under color of state law, caused the deprivation of a federal right . . . ." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The doctrine of qualified immunity "shields officials from liability 'insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Deciding whether government officials are entitled to qualified immunity is a two-step inquiry. *Id*. First, "viewing the facts in the light most favorable to the plaintiff, 'do the facts alleged show that the officer's conduct violated a constitutional right?'" *Id*. (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). "Second, was 'the right was clearly established' at the time of the violation?" *Id*.

##### a. Fourth Amendment Claims: Excessive Force (Count One) & Search and Seizure (Count Three)

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV.; *Graham v. Connor*, 490 U.S. 386, 388 (1989). "[A]n officer seizes a person when he uses force to apprehend [them]. Thus, to be constitutional, [the force] must be reasonable, not excessive." *Osborn v. City of Columbus*, No. 22-3570, 2023 U.S. App. LEXIS 6264, at *8-9 (6th Cir. Mar. 15, 2023) (alterations in original) (internal citation omitted) (citation omitted). Whether an officer is entitled to qualified immunity for an excessive force claim is determined based on: "(1) the severity of the crime at issue, (2) whether the individual

posed an immediate safety threat, and (3) whether the individual was actively resisting arrest or attempting to evade arrest[.]" *Id.* (alteration in original) (internal quotations marks omitted) (citing *Graham*, 490 U.S. at 388).

Robertson was arrested for public intoxication, resisting arrest, disorderly conduct, two counts of assault, and offense of persistent felony offender. (Defs.' Mem. 13-14). The first factor weighs in favor of Perkins' reasonableness as the crimes in question were serious in nature. The encounter between Robertson and Perkins started as a result of Robertson walking and "kicking his feet and swinging his arms" at motorists on a highway. (Defs.' Mem. 5). Upon interacting with Robertson, Perkins observed that he was manifestly intoxicated. Additionally, despite being tased, Robertson still managed to act unaffected as he began to run in the southbound lane of the highway, in the first instance, and walked aggressively towards Perkins after the second tasing. (Defs.' Mem. 5-6). Robertson's intoxication coupled with the danger presented to both him and the passing cars weighs in favor of the Perkins' reasonableness in regards to the second factor.

The third factor weighs in favor of the Defendants as Robertson was actively avoiding arrest during the encounter. Perkins told Robertson he was under arrest before he tased him for the first time. *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) ("The general consensus among our cases is that officers cannot use force . . . on a detainee who has been subdued, is not told he is under arrest, or is not resisting arrest."). Defendants are entitled to summary judgment on this count.

"[A] law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citation omitted). "Probable cause necessary to justify an arrest is defined as 'whether at that moment the facts and circumstances within [the

6

officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Id*. (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *Barton v. Martin*, 949 F.3d 938, 950 (6th Cir. 2020). The Sixth Circuit established that "[t]hese factors are not an exhaustive list, and the ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008) (citation omitted); *Young v. Hicks*, No. 5:19-CV-200-TBR, 2021 U.S. Dist. LEXIS 163637, at *17 (W.D. Ky. Aug. 30, 2021) (citation omitted). This determination must be made from the viewpoint of a reasonable officer at the scene. *Dressler v. Rice*, 739 F. App'x 814, 819 (6th Cir. 2018) (citation omitted).

In this instance, viewing the facts from Perkins' perspective, the seizure was reasonable. From his viewpoint of the incident, Perkins observed that Robertson: (i) was under the influence of intoxicants; (ii) posed a danger to motorists, himself, and the officers; and (iii) was not compliant with Perkins' directives. Robertson in no way has contested these contentions, other than the bare allegations in the Complaint. The Court finds summary judgment is appropriate on this count.

### b.     Cruel and Unusual Punishment (Count Five)

"The Eight Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991) (internal citation omitted). An Eighth Amendment claim cannot be brought by plaintiffs who are not convicted criminals. *Griham v. City of Memphis*, No. 2:21-cv-02506-MSN, 2022 U.S. Dist. LEXIS 178721, at *10 (W.D. Tenn. Sept. 30, 2022) (citing *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010); *Graham*, 490 U.S. at 398-99). But the Sixth Circuit has held that the "Eighth Amendment cruel and unusual

punishment analysis . . . is applicable to pretrial detainees." *Jordan v. Summit Cnty.*, No. 5:17-cv-02047, 2018 U.S. Dist. LEXIS 154663, at *12 (N.D. Ohio Sept. 11, 2018) (quoting *Danese v. Asman*, 875 F.2d 1239, 1243 (6th Cir. 1989)); *Gray v. City of Detroit*, 399 F.3d 612, 615-16 (6th Cir. 2005) ("While the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is analogous to prisoners' rights under the Eighth Amendment." (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001))).

The Sixth Circuit explained in *Comstock v. McCray*, 273 F.3d 693 (2001), the components of an Eighth Amendment claim are as follows:

> An Eighth Amendment claim has two components, one objective and one subjective. To satisfy the objective component, the plaintiff must allege that the medical need at issue is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that *he should have perceived but did not*, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.".

*Id*. at 702-03 (quoting *Farmer*, 511 U.S. at 838). The Complaint alleges that the physical altercation between the deputies and Robertson that caused "blunt trauma and deep lacerations" to his head, that he was transported to the ER and then "released to the Russell County Jail, but was later returned to the hospital." (Compl. ¶¶ 14, 15). Defendants argue that there is no evidence to suggest that Perkins negligently or intentionally refused Robertson medical care. (Defs.' Mem. 29).

8

Following the analysis in *Comstock*, Robertson has not alleged or argued that he had a medical need that was "sufficiently serious" that was not addressed within a reasonable time. *Harris v. City of Circleville*, 583 F.3d 356, 368 (6th Cir. 2009). As Defendants note in their motion, Robertson received treatment for a single laceration at the ER and was then transported to Russell County Jail. (Defs.' Mem. 5). Later at the jail, Robertson received additional treatment by the nurse, who removed his staples and provided him ibuprofen. (Defs.' Mem. 9). With respect to the subjective prong, Robertson has not alleged or argued any facts that show that Perkins or Polston perceived and disregarded any risk to Robertson. The facts presented show that once he was aware of Robertson's injury, Perkins called EMS for Robertson to receive treatment. Defendants are entitled to summary judgment on this count.

    **2.**    *Polston's Liability (Count Four)*

In the Complaint, Robertson also alleges that Polston should be liable for the constitutional violations under Section 1983 for failing to properly train, supervise, and discipline his employees in behavior that amounts to deliberate indifference. (Compl. ¶ 44). Defendants argue that under Kentucky law, Perkins received the necessary training required, so Robertson could not prevail on a failure to train theory of liability. (Defs.' Mem. 26). Additionally, they assert that Polston was not involved with Robertson's arrest and that there is no evidence to suggest Polston's training or supervision of the deputies fell below any applicable standard or care. (Defs.' Mem. 26).

For a claim of supervisory liability, an "official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)); *Chowning v. Hardin Cnty.*, No. 3:19-CV-509-CRS, 2022 U.S. Dist. LEXIS 178731, at *21 (W.D. Ky. Sept.

9

30, 2022) (citation omitted); *see Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (stating that supervisory liability "cannot be premised solely on a theory of respondeat superior, or the right to control employees." (citing *Hays*, 668 F.2d at 872). There is no evidence that Polston participated in the arrest, that he encouraged the specific incident, or that he had contemporaneous knowledge of the arrest, so this claim fails. *Hubble v. Cnty. of Macomb*, No. 2:16-cv-13504, 2019 U.S. Dist. LEXIS 68465, at *66 (E.D. Mich. Apr. 23, 2019). Additionally, as the Court has found that Perkins did not act unconstitutionally, liability could not be extended to Polston. With respect to Robertson's argument that Polston is liable for failing to change or end a policy, *Monell* claims cannot proceed against officers in their individual capacities. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978); *Kentucky*, 473 U.S. at 165.

### 3. *Official Capacity* – **Monell** *Claim*

Robertson brings claims against Perkins and Polston in their official capacities. "An official-capacity claim against a person is essentially a claim against the municipality." *Peatross*, 818 F.3d at 241 (citation omitted); *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 738 (S.D. Ohio 2022) (citation omitted); *Bush v. Rauch*, 38 F.3d 842, 848-49 (6th Cir. 1994). Thus, Robertson's official capacity claims are construed as claims against Russell County.

The basis for Robertson's official capacity claims is not entirely clear from the Complaint—as he names both Perkins and Polston in their official and individual capacities. The majority of these claims are "thus effectively duplicative claims against" Russell County. *Assi*, 625 F. Supp. 3d at 749. Importantly, "to establish a municipal government's § 1983 claim liability, a plaintiff must connect his or her injury to actions taken by the municipal government *itself*." *Id*. To make this showing, a plaintiff must prove: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal

actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (quoting *Gardner v. Lexington-Fayette Urb. Cnty. Gov't*, No. 21-5941, 2022 U.S. App. LEXIS 6140, at *2 (6th Cir. Mar. 9, 2022)); *Young*, 2021 U.S. Dist. LEXIS 163637, at *35 ("[T]he Court must determine: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the city is responsible for that violation." (citation omitted)).  Robertson's viable claim against Defendants' in their official capacity is Count Four, where he cites to a policy, pattern of practice, or custom that violates individuals' constitutional rights.

To be successful, Robertson would need to prove that the actions or inactions of Defendants were done pursuant to a Russell County policy or custom, and that this policy or custom was the "moving force" behind the deprivation of rights. *Young*, 2021 U.S. Dist. LEXIS 163637, at *35 (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010)).  A custom is a legal institution not memorialized by written law that is "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691-92 (internal quotation marks omitted).  Further, there must be a causal connection between the policy or custom and the violation of federal law. *Young*, 2021 U.S. Dist. LEXIS 163637, at *35-36.  Proof that more than one incident has occurred "is necessary to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation." *Id*. (citing *Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985)).  Additionally, a plaintiff must first establish that a constitutional violation occurred. *Id*. at *36 (citation omitted).  Robertson has failed to establish that a federal violation has occurred, has failed to provide facts of more than one incident, and has failed to cite to a specific policy or custom.  As a result, Defendants are entitled to summary judgment on Robertson's *Monell* claim.

### B. State Law Claims (Count Two)

A federal court may, in its discretion, retain supplemental jurisdiction over state law claims after the federal claims have been dismissed, but pendent state law claims should also normally be dismissed. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996); *Muhammad v. United States*, No. 3:22-cv-087-RGJ, 2023 U.S. Dist. LEXIS 22103, at *14-15 (W.D. Ky. Feb. 9, 2023) ("When deciding to exercise supplemental jurisdiction, a court should consider the 'values of judicial economy, convenience, fairness, and comity.'" (quoting *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010))). Because all of Robertson's federal claims against Perkins and Polston are being dismissed, the Court declines to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Robertson's remaining state law claims are dismissed without prejudice.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment (DN 33) is **GRANTED**.

2. Plaintiff's claims under 42 U.S.C. § 1983 (Counts I, III, IV, and V) are **DISMISSED WITH PREJUDICE**.

3. Plaintiff's state law claims (Count II) are **DISMISSED WITHOUT PREJUDICE**.

4. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

September 20, 2023

cc: counsel of record